Filed 4/28/17

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re I.V., a Person Coming Under the Juvenile Court Law. | |
| | D070611 |
| THE PEOPLE, | |
| Plaintiff and Respondent, | (Super. Ct. No. J236560) |
| v. | |
| I.V., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Aaron H. Katz, Judge. Affirmed.

Daniel Brian Yeager, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina, Alastair J. Agcaoili and Britton B. Lacy, Deputy Attorneys General, for Plaintiff and Respondent.

Minor I.V. appeals a dispositional order adjudging him a ward of the court pursuant to Welfare and Institutions Code[1] section 602 and placing him on formal probation, subject to various terms and conditions. On appeal, I.V. argues that the juvenile court erroneously imposed a probation condition requiring him to enroll in the Reflections Day Center Treatment Program (Reflections) without making necessary findings about his special educational needs under California Rules of Court,[2] rule 5.651(b)(2)(D). I.V. also argues that a probation condition allowing warrantless searches of his "person, property, vehicle, and any property under his/her immediate custody or control" is unconstitutionally vague and overbroad because it may encompass searches of his electronic devices and data. We affirm the judgment.[3]

FACTUAL AND PROCEDURAL SUMMARY

In May 2016, 15-year-old I.V. became angry with his mother when she would not give him shopping money. He went into his bedroom in his grandfather's home, punched and kicked the walls, and threatened his grandfather when his grandfather tried to intervene. I.V.'s mother called the police, who arrived to find a broken lock on I.V.'s bedroom door, a damaged bed frame, holes in the wall, and damaged furniture.

---

[1]     Further statutory references are to the Welfare and Institutions Code, unless otherwise specified.

[2]     Further rule references are to the California Rules of Court.

[3]     The disposition order is the final step in a section 602 proceeding and constitutes an appealable judgment. (*In re Z.A.* (2012) 207 Cal.App.4th 1401, 1404, fn. 2.)

The San Diego County District Attorney filed a petition pursuant to section 602, alleging that I.V. had committed felony vandalism (Pen. Code, § 594, subd. (a)(b)(1)). The juvenile court ordered that I.V. be detained outside the home and that he undergo a psychological evaluation.

Psychologist Richard Jordan evaluated I.V. and submitted a report. I.V. informed Dr. Jordan that he had previously been diagnosed with ADHD (attention deficit hyperactivity disorder) and ODD (oppositional defiant disorder), but he claimed to no longer experience ADHD symptoms and said that he had not taken medication in two years. I.V. told Dr. Jordan that he had an individualized education program (IEP) at school but did not state the reason.[4] I.V.'s K-BIT2[5] test results indicated that he had a composite I.Q. in the 7th percentile and was "functioning in the below-average range intellectually, with . . . no significant strengths or weaknesses." I.V.'s WRAT-4[6] scores indicated that he was "performing in the average range, with no significant strengths or weaknesses" and that he did not have a learning disorder. Dr. Jordan concluded that I.V.'s cognition "appeared normal and intact"; his memory was good, and his insight and judgment were fair. He diagnosed I.V. with Disruptive Behavior Disorder and

---

[4]    An IEP is a comprehensive statement of a disabled child's educational needs and the specifically designated instruction and related services that will meet those needs. (*In re Carl R.* (2005) 128 Cal.App.4th 1051, 1067; see discussion, *post*.)

[5]    The Kaufman Brief Intelligence Test, Second Edition, is used to measure verbal and nonverbal cognitive ability.

[6]    The Wide Range Achievement Test, Fourth Edition, measures reading, sentence comprehension, spelling, and math computation abilities.

recommended individual therapy, but he found I.V. to be "stable and symptom-free" and did not recommend a "psychotropic medical evaluation."

At the settlement conference in early June, I.V. asked the court to release him on home supervision. His trial counsel stated that I.V. had to attend an IEP appointment at school, attend individual counseling, and see a psychiatrist to inquire about ADHD medication. The court granted the request and released I.V. on home supervision.

At the adjudication hearing on June 16, 2016, the juvenile court heard testimony from I.V.'s mother, grandfather, and the responding police officer and received in evidence a video recording of the incident. The court determined that the People had not proven beyond a reasonable doubt that the damage exceeded $400 so as to sustain the felony vandalism allegation in the petition. However, the court sustained the petition, finding that I.V. had committed the lesser included offense of misdemeanor vandalism (Pen. Code, § 594, subd. (b)(2)(A)).

In late June, the probation department submitted a social study evaluating I.V. for the disposition hearing. The social study noted I.V.'s history of damaging property when upset and his mother's tendency to downplay his volatile behavior. The social study indicated that I.V. entered special education during his elementary school years but did not take advantage of available services, and that he had an IEP of an unknown date.

I.V.'s mother reported that I.V. had had an IEP in place since elementary school.[7] The probation department requested a copy of I.V.'s current IEP, but the high school registrar did not honor the request. I.V.'s high school did send a record of his grades, attendance, and disciplinary actions. I.V. received failing grades in all of his classes in his first semester of high school, and he had a history of truancy. He was suspended for possessing marijuana and was subsequently expelled from his high school. He finished his freshman year at San Diego S.O.A.R. Academy, where he received slightly better grades. I.V.'s mother reported that her son did not drink alcohol, consume illicit substances in the last year, or have any gang affiliations.

Given I.V.'s poor academic performance and history of truancy, the social study recommended that the court order him to participate in Reflections as a condition of probation, suggesting that I.V. would benefit from the structured environment, psychiatric and counseling services, and wraparound services that the program would provide. The probation department attached a copy of Dr. Jordan's psychological evaluation to the social study.

At the disposition hearing on June 30, 2016, the juvenile court adopted the probation department's recommendations, adjudged I.V. a ward of the court pursuant to section 602, and placed him on supervised probation under his mother's care. Among the

---

[7] The social study questioned I.V.'s mother's credibility; although she told the probation officer that I.V. attended monthly therapy to treat his ADHD, ODD, and "Impulsivity Disorder," she previously told Dr. Jordan that I.V. had not seen a psychiatrist for a year.

conditions of probation was a requirement that I.V. participate in the Reflections program (the Reflections condition):

> "The minor . . . shall successfully complete the Reflections Day Center Program and abide by the rules and conditions of the program. If, for the protection of the minor, staff, or other wards, the Reflections staff deems it necessary to temporarily remove minor from the program, the minor may be detained in Juvenile Hall for a period not to exceed 36 hours for stabilization and mental health crisis intervention."

I.V. objected to the Reflections condition, but the court overruled his objection and denied his request to set a contested disposition hearing to assess his special educational needs.[8]  In addition to the Reflections condition, the juvenile court imposed the following search condition:

> "Minor shall submit his/her person, property, or vehicle, and any property under his/her immediate custody or control to search at any time, with or without probable cause, with or without a search warrant by any law enforcement officer or peace officers, probation officers, school officials or officers, and any other state security officers or agents engaged in the lawful performance of their duties."

I.V. timely appealed.

## DISCUSSION

On appeal, I.V. challenges the Reflections condition, arguing that the juvenile court failed to make necessary findings under rule 5.651(b)(2) as to his special educational needs.  He also challenges the search condition as unconstitutionally vague and overbroad because it could permit warrantless searches of I.V.'s electronic devices and data.  We disagree with both contentions and conclude that: (1) the juvenile court

---

[8]    To avoid repetition, we include additional procedural history in our discussion.

6

sufficiently considered I.V.'s educational needs when it imposed the Reflections condition; (2) I.V. forfeited his overbreadth challenge by failing to object in the juvenile court; and (3) reasonably construed, the search condition does not encompass searches of electronic data and is not unconstitutionally vague.

A.      *The Reflections Condition*

I.V. contends that the juvenile court failed to comply with rule 5.651(b)(2)(D) when it imposed the Reflections condition.  As we explain, we conclude that the court complied with the rule by sufficiently considering I.V.'s educational needs.

1.      *Legal Principles*

Special education law involves an interplay of state and federal statutes.  Pertinent here, at the federal level, Congress enacted the Individuals with Disabilities Education Act (IDEA) "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs . . . ."  (20 U.S.C. § 1400(d)(1)(A).)  Pursuant to the IDEA, a "child with a disability" is a child who needs "special education and related services" on account of "intellectual disabilities, hearing impairments (including deafness), speech or language impairments, visual impairments (including blindness), serious emotional disturbance. . . , orthopedic impairments, autism, traumatic brain injury, other health impairments, or specific learning disabilities[.]"  (20 U.S.C. § 1401(3)(A); see 34 C.F.R. § 300.8(a)(1).)

The IDEA lays out a substantive procedure for developing an individualized education program (IEP) for children with disabilities.  (*County of San Diego v.*

7

*California Special Ed. Hearing Office* (9th Cir. 1996) 93 F.3d 1458, 1461.) A parent or local educational agency may request an initial evaluation. (20 U.S.C. § 1414(a)(1)(B).) If a child is deemed to be a "child with a disability," an IEP Team consisting of parents, teachers, and local agency representatives then prepare an IEP for the student. (20 U.S.C. § 1414(d)(1)(A)-(B).) The IEP describes how the student's disability affects his or her performance in the general education curriculum, recommends specifically designed instruction and related services "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances," and sets measurable annual goals. (20 U.S.C. § 1414(d)(1)(A)(i); *Endrew F. ex rel. Joseph F. v. Douglas County School Dist. RE-1* (2017) 137 S.Ct. 988, 1001; see *In re Carl R., supra,* 128 Cal.App.4th at p. 1067.)

At the state level, Education Code section 56000 provides that "all individuals with exceptional needs have a right to participate in free appropriate public education." An "individual with exceptional needs" is one who has been identified by an IEP Team as a "child with a disability" under the IDEA; has an impairment that "requires instruction and services, which cannot be provided with modification of the regular school program"; and meets certain eligibility criteria. (Ed. Code, § 56026, subds. (a)-(d); see Cal. Code Regs., tit. 5, § 3030.) Students "whose educational needs are due primarily to limited English proficiency; a lack of instruction in reading or mathematics; temporary physical disabilities; social maladjustment; or environmental, cultural, or economic factors" are not individuals with exceptional needs. (Ed. Code, § 56026, subd. (e).)

The California Rules of Court implement these federal and state mandates in juvenile delinquency proceedings. "Rules of court have the force of law and are as

8

binding as procedural statutes as long as they are not inconsistent with statutory or constitutional law." (*R.R. v. Superior Court* (2009) 180 Cal.App.4th 185, 205.) Rule 5.651 incorporates federal and state laws regarding education and developmental services but does not purport to create new rights. (Rule 5.651(a).) Pursuant to rule 5.651(b)(2)(A), at the disposition hearing or any subsequent hearing affecting the minor's education, the juvenile court must determine whether the minor's educational needs, including the need for special education and related services, are being met. The court's findings and orders must address whether the minor's educational needs are being met *and* indicate any special education and related services, assessments, or evaluations the minor may need. (Rule 5.651(b)(2)(E).)[9]

Before a dispositional hearing, the juvenile court "must ensure that, *to the extent the information was available*, the social worker or the probation officer provided [certain] information in the report for the hearing." (Rule 5.651(c), italics added.) In particular, where available, reports must: indicate whether the child has "physical, mental, or learning-related disabilities or other characteristics indicating a need for

_____

[9]     Rule 5.651(b)(2) provides, in relevant part: "At the dispositional hearing and at all subsequent hearings described in (a)(2), the court must: [¶] (A) Consider and determine whether the child's or youth's educational, physical, mental health, and developmental needs, including any need for special education and related services, are being met; [¶] (B) Identify the educational rights holder on form JV-535; and [¶] (C) Direct the rights holder to take all appropriate steps to ensure that the child's or youth's educational and developmental needs are met. [¶] The court's findings and orders must address the following: [¶] (D) Whether the child's or youth's educational, physical, mental health, and developmental-services needs are being met; [¶] (E) What services, assessments, or evaluations, including those for developmental services or for special education and related services, the child or youth may need . . . ."

9

developmental services or special education and related services"; indicate whether the child "is receiving special education and related services or any other services through a current [IEP]"; and attach a copy of the minor's current IEP. (Rule 5.651(c)(5) & (c)(8).)

Although both parties suggest that the de novo standard of review applies to evaluate the court's compliance with rule 5.651, we conclude that the correct standard is abuse of discretion. The juvenile court has broad discretion to select appropriate conditions of probation. (§ 730, subd. (b); see *In re Sheena K.* (2007) 40 Cal.4th 875, 889 (*Sheena K.*).) " 'A discretionary order that is based on the application of improper criteria or incorrect legal assumptions is not an exercise of informed discretion, and is subject to reversal even though there may be substantial evidence to support that order.' " (*In re Ray M.* (2016) 6 Cal.App.5th 1038, 1051.) Under this standard, we find no error.

2. *Application*

At the dispositional hearing, the court indicated that it was inclined to follow the recommendations set forth in the probation department's social study. I.V. objected to the Reflections condition and requested that he instead be allowed to return to his high school. I.V.'s mother argued that I.V. would do better in a "regular school environment," whereas Reflections would "set him back." She acknowledged his poor school attendance record but claimed that I.V. took longer than others to recover from illnesses. By contrast, the People argued that I.V.'s actions demonstrated his need for a more structured environment, which Reflections would provide.

The court then imposed the Reflections condition. The court found that I.V.'s grades and behavior were poor and observed that his psychological evaluation, which

10

was attached to the social study, "indicates that he could use the additional support that will be provided at Reflections." The court found I.V. to be "a young man who definitely needs the structure and support that Reflections will provide."

Those findings satisfy rule 5.651(b)(2)(D)'s requirements. The juvenile court considered and rejected I.V.'s argument that his educational needs would be better met at his high school and credited the probation department's contrary recommendation that Reflections would provide him the support and structure that he needed. In making its findings, the court appropriately relied on the probation department's social study and the psychological evaluation. The psychological evaluation stated that, based on I.V.'s test scores, he was "performing in the average range" and further stated that "[a] learning disorder is not indicated"; the evaluation indicated that I.V. had normal cognition, good memory, and fair insight and judgment. The social study noted I.V.'s failing grades, truancy, poor behavior, and expulsion and recommended the Reflections condition in the hope that the program's structured environment would lead to an improvement in his academic performance and behavior.[10] The juvenile court reasonably followed that recommendation.

I.V. contends that the court erred when it imposed the Reflections condition "without a single detail about his IEP," and suggests that the court was required to

_____

[10] In particular, the probation department believed that Reflections would provide a structured environment with "psychiatric and counseling services on site, as well as wraparound services, that may prove beneficial for the minor in addressing his aggressive behavior, family trauma, and untreated ADHD." The probation department hoped that Reflections would redirect I.V.'s behavior and help him perform better at school.

11

procure a copy of the IEP. Although the social study stated that I.V. had been a special education student during his elementary school years and that he had an IEP of an unknown date, there is no indication that the court failed to consider this information in making its findings. Rule 5.651(b)(2)(D) requires merely that the court address the minor's educational needs and does not specify the information on which the assessment must rest. Consistent with rule 5.651(c), the probation department requested a copy of I.V.'s current IEP to attach to the social study and provided his educational history "to the extent the information was available." The court was not obligated to procure I.V.'s IEP in order to make findings under rule 5.651(b)(2).[11]

I.V. also argues that the juvenile court failed to complete the JV-535 form, as required under rule 5.651(b)(2)(B). The form does not appear to be part of the "normal record" on appeal (rule 8.407(a)), but the law presumes that an official duty has been regularly performed (Evid. Code, § 664). We therefore presume that the appropriate form was completed.[12]

After the court made its ruling, I.V. requested a contested disposition hearing to challenge the Reflections condition but made no proffer as to what new information he

---

[11]    An IEP sets forth a *disabled child's* educational needs. (*In re Carl R., supra,* 128 Cal.App.4th at p. 1067.) Given the statement in the psychological evaluation that "[a] learning disorder is not indicated," the juvenile court have reasonably believed that I.V. was not a disabled child and that any IEP on file was out of date. (See 20 U.S.C. § 1414(d)(4)(A) [IEP Team reviews a child's IEP at least once per year and revises as appropriate to address a disabled child's needs].)

[12]    Rule 5.651(b)(2)(B) requires the court to "[i]dentify the educational rights holder on form JV-535." The social study, which the court admitted into evidence, identified I.V.'s mother as the educational rights holder.

might present at such a hearing. Counsel suggested that I.V. could meet with an education specialist and high school representative to determine whether he could benefit from educational services. However, in seeking release on home supervision three weeks prior, I.V. stated that he had to attend similar meetings, including an IEP appointment at school, a counseling session, and a psychiatric appointment. These appointments, which were scheduled to take place before the dispositional hearing, did not result in new information presented to the court regarding his educational needs. In the absence of a proffer of new relevant information that would be presented at a contested hearing, the court could have reasonably concluded that there was no reason to schedule a hearing at that time.

Moreover, I.V. remained free to revisit the Reflections condition through an appropriate petition for modification. (§ 778.) The juvenile court specifically stated that I.V. could present new information to the probation department to challenge the Reflections condition and that if the probation department suggested a need to do so, the court would be willing to set a special hearing to reevaluate the condition.

In arguing that the juvenile court failed to make required findings, I.V. relies chiefly on *In re Angela M*. (2003) 111 Cal.App.4th 1392 (*Angela M.*). In that case, the juvenile court committed the minor to the California Youth Authority (CYA)[13] after she admitted to having violated the terms of her probation. (*Id.* at p. 1392.) The minor's

---

13    Effective 2005, CYA is now California Department of Corrections and Rehabilitation, Division of Juvenile Justice (DJJ). (*In re D.J.* (2010) 185 Cal.App.4th 278, 280, fn.1.)

evaluating psychologist strongly believed that she had a learning disability and recommended an IEP assessment. (*Id.* at p. 1395.) Despite being "clearly on notice" that the minor may have had special educational needs, the juvenile court "did not mention this issue when committing her to the CYA." (*Id.* at pp. 1398-1399.) The appellate court concluded that by doing so, the court failed to fulfill its obligation to consider the minor's educational needs and ordered a limited remand "to permit the juvenile court to make proper findings, on a more fully developed record, regarding [minor's] educational needs." (*Id.* at p. 1399.)

*Angela M.* stands for the proposition that where the juvenile court is on notice that special attention to a minor's educational needs is appropriate, the court must make adequate findings on a sufficient record as to whether the minor has special educational needs before it commits the minor to DJJ. (*Angela M., supra,* 111 Cal.App.4th. at p. 1398.) Here, the court expressly considered I.V.'s educational needs, particularly his need for greater structure and support, in imposing the Reflections condition, and the psychological evaluation revealed no indications of a learning disability. Unlike in *Angela M.*, a "more fully developed record" is not required.

B.  *The Search Condition*

I.V. challenges the probation condition requiring him to submit his "person, property, or vehicle, and any property under [his] immediate custody or control to search at any time, with or without probable cause, with or without a search warrant." He argues that the condition is unconstitutionally vague and overbroad because it may encompass

searches of electronic devices and data.[14] We conclude that I.V. forfeited his overbreadth challenge by failing to object in the juvenile court, and that the search condition is not unconstitutionally vague. As we explain, reasonably construed, the condition does not encompass searches of electronic data.

Although the juvenile court has broad discretion to impose reasonable conditions of probation (§ 730, subd. (b)), it may not impose a condition that is unconstitutionally vague or overbroad. (*Sheena K., supra,* 40 Cal.4th at p. 889.) Vagueness considers whether a condition is sufficiently precise to give the probationer fair warning of what conduct is required or prohibited; overbreadth considers the closeness of fit between the state's interest in reformation and rehabilitation and the burden imposed on the minor's constitutional rights. (*Id.* at p. 890; *In re Victor L.* (2010) 182 Cal.App.4th 902, 910.)

I.V. did not object to the search condition in the juvenile court, but claims to bring a facial constitutional challenge that may be raised for the first time on appeal. (*Sheena K., supra,* 40 Cal.4th at p. 889.) I.V. contends that "*no* probationer would be adequately notified of the scope of the term 'property' as it relates to electronic devices" and that the condition is overbroad, "invariant to his circumstances." "[G]enerally, given a

---

14      Several cases addressing the constitutionality of electronic search probation conditions are currently pending review in the Supreme Court. (See, e.g., *In re Ricardo P.* (2015) 241 Cal.App.4th 676, 680-681, review granted February 17, 2016, S230923; *In re Patrick F.* (2015) 242 Cal.App.4th 104, 108, review granted February 17, 2016, S231428; *In re Alejandro R.* (2015) 243 Cal.App.4th 556, 561, review granted March 9, 2016, S232240; *In re Mark C.* (2016) 244 Cal.App.4th 520, review granted April 13, 2016, S232849; *In re A.S.* (2016) 245 Cal.App.4th 758, review granted May 25, 2016, S233932; *In re J.E.* (2016) 1 Cal.App.5th 795, review granted October 12, 2016, S236628; *People v. Nachbar* (2016) 3 Cal.App.5th 1122, review granted December 14, 2016, S238210.)

15

meaningful opportunity, the probationer should object to a perceived facial constitutional flaw at the time a probation condition initially is imposed in order to permit the trial court to consider, and if appropriate in the exercise of its informed judgment, to effect a correction." (*Ibid.*) At the disposition hearing, the court asked I.V. if he had "any other concerns as to any of the other conditions." I.V. did not voice any concerns or seek clarification of the search condition.

Although I.V. purports to raise a facial challenge, we conclude that he forfeited his overbreadth claim by failing to object in the juvenile court. I.V. contends that the search condition serves no rehabilitative purpose and "threatens to reveal private information unlikely to shed any light on whether he is complying with his other conditions of probation." To address that claim, we would have to review the record to assess whether the condition is sufficiently tailored to I.V.'s rehabilitative needs. (See *People v. Kendrick* (2014) 226 Cal.App.4th 769, 777-778 [although presented as a facial challenge, defendant in fact advanced an *as-applied* challenge, forfeited on appeal].) An alleged constitutional defect that is "correctable only by examining factual findings in the record or remanding to the trial court for further findings" is not a facial constitutional challenge, and traditional forfeiture principles apply. (*Sheena K., supra,* 40 Cal.4th at p. 887.)

By contrast, I.V.'s vagueness claim does present a facial constitutional challenge. I.V. contends that the word "property" in the search condition is unconstitutionally vague as to whether it encompasses electronic devices and data. Because this challenge may be addressed without examining the record, it is not subject to forfeiture. (*Sheena K., supra,* 40 Cal.4th at p. 887.)

16

We apply de novo review to evaluate constitutional challenges to probation conditions. (*People v. Appleton* (2016) 245 Cal.App.4th 717, 723.) To withstand a vagueness challenge, "a probation condition must be sufficiently defined to inform the probationer what conduct is required or prohibited, and to enable the court to determine whether the probationer has violated the condition." (*People v. Hall* (2017) 2 Cal.5th 494, 500 (*Hall*).) A probation condition is not impermissibly vague " ' "simply because there may be difficulty in determining whether some marginal or hypothetical act is covered by its language." ' " (*People v. Morgan* (2007) 42 Cal.4th 593, 606.) We give the condition " 'the meaning that would appear to a reasonable, objective reader' " (*People v. Olguin* (2008) 45 Cal.4th 375, 382), and may consider the juvenile court's "additional oral or written comments clarifying" the condition (*Sheena K., supra,* 40 Cal.4th at p. 891). A probation condition survives a vagueness challenge if it can be given any reasonable and practical construction. (*Hall,* at p. 501.)

Applying those principles, we conclude that the search condition is not unconstitutionally vague. At the outset, we observe that probation conditions authorizing searches of a probationer's person, property, and vehicle are "routinely imposed." (*In re P.O.* (2016) 246 Cal.App.4th 288, 296.) In other wardship proceedings, juvenile courts have expressly imposed specific electronics and password conditions in addition to the standard search condition where they intend to subject a minor's electronic data to search. (See, e.g., *id.* at p. 292; *In re Erica R.* (2015) 240 Cal.App.4th 907, 910; *In re J.B.* (2015) 242 Cal.App.4th 749, 752.) There is no indication in this case that in imposing the

17

standard search condition, the juvenile court intended to authorize searches of I.V.'s electronic data.[15]

As imposed, the condition authorizes warrantless searches of I.V.'s "person, property, [and] vehicle." Reasonably construed, the search condition applies only to tangible physical property, and not to electronic data. We find support for this conclusion in *United States v. Lara* (9th Cir. 2016) 815 F.3d 605 (*Lara*). *Lara* considered whether a probation condition that allowed warrantless searches of a probationer's "person and property, including any residence, premises, container or vehicle under [his] control" encompassed searches of his cell phone data. (*Id.* at p. 610.) The Ninth Circuit concluded that it did not, explaining that the types of objects named in the probation condition were "physical objects that can be possessed," whereas cell phone data were "not property in this sense." (*Id.* at p. 611.) The court further noted that some data, such as medical and banking records, were held by third parties and could neither be "possessed physically" nor be under the probationer's "control," as the probation condition specified. (*Ibid.*) Consequently, the court held that evidence obtained from a search of the defendant's cell phone data (images, text messages, and GPS data) should have been suppressed despite the probation search condition. (*Id.* at pp. 607, 614.)

Giving the search condition its reasonable and practical construction, we conclude that it extends only to *tangible* property, and not to electronic data. As so construed, the

---

15    At oral argument, counsel stated that although I.V.'s electronic data had not yet been searched, I.V. could not be certain that the search condition would not be interpreted to authorize such searches of his electronic data in the future.

condition is not unconstitutionally vague. (*Hall, supra,* 2 Cal.5th at p. 501 ["a probation condition should not be invalidated as unconstitutionally vague ' " 'if any reasonable and practical construction can be given to its language' " ' "].) In recent years, the digital revolution has effected a sea change in how people store and carry around their private information and communications. Given this reality, we conclude that it would not be reasonable to construe the standard property search condition, the origin of which precedes the digital era, to encompass searches of electronic data. If a court intends to authorize warrantless searches of a probationer's electronic data, the procedure is straightforward—the court must impose an explicit search condition pertaining to electronic data.[16]

I.V. asks this court to modify the search condition to provide, "The minor shall submit for suspicionless search his person, vehicle, and the physical aspects of his property and of any property under his immediate custody or control at any time." We decline to do so. "At core, what [I.V.] seeks through modification is 'absolute clarity in the text of the condition itself, without the need to rely on 'a judicial construction.' But the question before us is not whether this degree of precision would be desirable in principle, but whether it is constitutionally compelled." (*Hall, supra,* 2 Cal.5th at p. 503.)

---

[16] This interpretation is consistent with California's recently enacted Electronic Communications Privacy Act (Pen. Code, § 1546 et seq.), which limits government entities' access to "electronic device information." Although the statute generally requires "specific consent" or a warrant before a government entity may access electronic device information, a government entity may also access such information "if the device is seized from an authorized possessor of the device *who is subject to an electronic device search as a clear and unambiguous condition of probation*, mandatory supervision, or pretrial release." (Pen. Code, § 1546.1, subd. (c)(10), italics added.)

The vagueness doctrine demands no more than a reasonable degree of certainty. (*Ibid.*) Given our decision today, the condition is properly construed as authorizing warrantless searches of I.V.'s person, vehicle, and *tangible* property. "[W]e decline [I.V.'s] invitation to modify [the search condition] simply to make explicit what the law already makes implicit." (*Ibid.*)

## DISPOSITION

The judgment is affirmed.

AARON, J.

WE CONCUR:

NARES, Acting P. J.

HALLER, J.