Filed 5/30/25  In re A.D. CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re A.D., a Person Coming Under the Juvenile Court Law. | |
| ALAMEDA COUNTY SOCIAL SERVICES AGENCY,<br><br>    Plaintiff and Respondent,<br>v.<br>P.W.,<br><br>    Defendant and Appellant. | A171683<br><br>(Alameda County<br>Super. Ct. No. JD-03510-01,<br>24FL084693) |

Appellant P.W. (Mother) appealed after the juvenile court dismissed dependency proceedings involving her son, A.D.  She argues that the juvenile court abused its discretion in issuing a final custody/visitation order because it severely limits contact with the minor.  Mother also claims that the visitation order is impermissibly vague.  We affirm.

I.
FACTUAL AND PROCEDURAL
BACKGROUND

We summarized previous, and lengthy, proceedings in this case in *In re A.D.* (Feb. 26, 2025, A169677, A170451) [nonpub. opn.] (*A.D. I*), and we briefly recount them here.  Mother started to show signs of mental distress

1

during the COVID-19 pandemic.  Although there was no corroborating evidence for her report, Mother believed that the minor suffered a head injury in late 2020 at a park, and she began taking her son to excessive medical appointments.  This sometimes involved taking the minor out of school early.  The minor's father (Father, who is not a party to this appeal) agreed with medical personnel that Mother was requesting unnecessary tests and lab work, but Mother continued to take the minor to medical appointments and request invasive and unnecessary tests.  She also began to have possibly delusional thoughts about her son, and Father continued to be concerned about Mother's mental health.  Mother became obsessed with the minor's food intake, and she also contacted law enforcement agencies with concerns over her son.

In December 2022, respondent Alameda County Social Services Agency (Agency) filed a dependency petition alleging that Mother had taken the minor to 18 medical appointments in the previous year despite doctors saying there was no medical necessity to do so and that the minor was healthy.  The Agency sought jurisdiction under Welfare and Institutions Code section 300,[1] subdivisions (b)(1) (failure to protect) and (c) (serious emotional damage).

The minor was first placed with a paternal aunt.  Within a few months, Father secured housing separate from Mother.  Before he was permitted to have a trial 14-day overnight stay with his son, Father sought, and the juvenile court granted, a temporary restraining order protecting both him and the minor from Mother.  The minor was placed with Father around March 2023, where he has remained ever since.

A combined hearing was held on both jurisdiction/disposition and the granting of a permanent restraining order protecting the minor.  It lasted

_____

[1] All statutory references are to the Welfare and Institutions Code.

2

over several days in June, July, August, September, November, and December 2023. During that time, Mother was encouraged to undergo a psychological evaluation and otherwise engage in services, but she did not do so.

The juvenile court found by clear and convincing evidence that the minor was a child described by section 300, subdivisions (b)(1) and (c). And the court also entered a permanent restraining order directing Mother to stay at least 100 yards away from the minor as well as his home, school, or daycare. The order was to stay in effect until December 2026. Mother was still permitted to have supervised visitation with her son at least once a week. This court affirmed these orders in *In re A.D. I, supra*.

Proceedings continued in the juvenile court. The Agency again submitted a referral for the Mother to receive a psychological evaluation and spoke with her about the benefits of being evaluated, but Mother refused and said she was "thriving in her life" and did not need it.

Mother also asked that the supervised visits with her son be held at her house with her sister (a maternal aunt) supervising. The social worker reminded Mother that the court previously had ordered that visits be held either at the home of the material aunt or a paternal aunt, or at a third party agency. Mother complained that the maternal aunt sometimes traveled, which interfered with her supervising visits. She told the social worker which agency used to supervise visits, and the social worker put in a request to that agency to resume supervising visits between Mother and her son.

Counsel for the minor sought to limit Mother's educational rights. At the hearing on the request in March 2024, the juvenile court observed that the only way for Mother to be involved with the minor's educational rights would be if the court modified the restraining order. But the court observed

that it had no indication that Mother was engaging in any services, and Mother's lack of understating or treating her mental-health challenges "ma[de] it difficult for this Court to modify either the restraining order, or allow the mother to retain educational rights." Mother protested that she "ha[d]n't done anything wrong," visitation with her son was "going great," and the minor "still ha[d] those problems" (referring to "bruises").

The juvenile court questioned Father about the minor, and Father explained that the minor scratched himself because Father did not trim his fingernails, and it took about a week for a cut to heal. Mother said this was a "complete lie," asked to "speak the truth," and proceeded to complain about the proceedings. When the court tried to stop Mother, Mother accused the court of having a "delusion problem" and being "sick." When the court directed Mother to leave the courtroom, Mother stated, "You are mentally sick. I'm how you supervised [*sic*]—how you raise 17-year-old child [*sic*]. He will suffering [*sic*] the same consequence. He will die." Mother "was yelling at the top of her voice, pointing at the Court," according to county counsel, and she jumped out of her chair and "was cursing as she left the room," and she had to be "helped out of the courtroom by the court officer/attendant." County counsel later described Mother's level of agitation as "extreme," and the juvenile court agreed.

After Mother left the courtroom, the juvenile court observed, "I think we should be cognizant of the fact that the mother's mental health is deteriorating. It has gotten worse than the last time we were here, which was about maybe three months ago. That level of spiral makes me uncomfortable, even potentially with the visitation." The court also explained that "[t]he reason I asked the father on the record whether or not he had noticed bruising or other medical things about his son is because it is clear to

4

me that the mother is having some level of disconnect from reality at this point, or psychotic break." The court said Mother's behavior "almost feels like a psychotic—or looks like what I've seen in my 10 years of doing this, close to a psychotic break." Mother's "higher level" of mental health challenges made the decision to limit Mother's educational rights "much easier" for the court.

The juvenile court addressed Father, saying that it must be hard for him and that the court knew Father loved Mother. Father said he had benefited from multiple sessions of therapy, and he had encouraged Mother to try it as well. And he further reported that visitation took place either at an agency provided by the Agency or at a maternal aunt's house. Visits went well, but other times Mother "does not realize what she's talking about or what she's saying." The court granted the request to limit Mother's educational rights, and this court affirmed that order in *In re A.D. I.*

Father maintained stable housing at a confidential location separate from Mother. Father was reportedly responsive and attentive with the minor, and the two were doing well. He had completed a parenting class and individual therapy sessions. Father said he planned to file for physical custody of his son "to protect him at all times," and he had bonded with the minor as a single father. Whereas the Agency had initially been concerned that Father was unwilling to protect his son from Mother's excessive medical appointments, that was no longer a concern as Father was meeting the minor's needs.

The Agency recommended in a status review report filed in May 2024 that the minor continue to live with Father, and that dependency proceedings be dismissed. The Agency also recommended that Mother "continue to have supervised visits with a third party Agency paid cost [*sic*] as arranged by the

parents, or supervised visits with an approved relative as arranged by the parents." The social worker reported that Mother did not agree to the recommendation. The social worker explained to Mother that the proposed custody order would "detail that she [Mother] continue to have third party supervised visits cost arranged by both parents [*sic*], or arranged by approved relative by both parents." Under a section titled "VISITATION FOR NON-CUSTODIAL PARENT," the report identified the agency that was then handling the "Court ordered supervised visitation at a minimum of two hours per week as coordinated by the parents." Mother engaged with the minor, and visits went well. The proposed visitation form order submitted with the review report stated: "[Mother] supervised visitation is two hours with the minor per week. Both parents should agree on dates, times, and locations."

At a brief hearing in July 2024, county counsel said she was submitting on behalf of the Agency based on the review reports and proposed custody orders, and both Father's counsel and the minor's counsel stated they agreed with the recommendations and custody order. Mother's counsel stated that Mother objected to assigning sole legal and physical custody to Father, but that he (the attorney) would not be presenting additional witnesses or evidence. Counsel did not mention the proposed visitation order, let alone object that it was vague or ambiguous.

The juvenile court stated that the custody orders were "appropriate based upon the facts in this case as well as the lack of progress made by the mother to address the reasons that the case came before the Court." The court adopted the Agency's recommendations, concluded that conditions no longer existed that justified the initial assumption of jurisdiction and would not likely return if supervision was withdrawn, and terminated dependency jurisdiction. The court entered a final custody order that awarded sole legal

6

and physical custody to Father. The court also entered the form visitation order, which was unchanged from the proposed order submitted by the Agency before the hearing (i.e., two hours of weekly supervised visitation). A Family Law action was commenced in the trial court. (See § 362.4, subd. (c) [if no action is pending in superior court when juvenile court terminates jurisdiction over a minor, the termination order "may be used as the sole basis for opening a file in the superior court of the county in which the parent, who has been given custody, resides"].)

## II.
### DISCUSSION

A. *This Court's Opinion in* In re A.D. I *Renders Moot Some of Mother's Arguments.*

Mother filed her opening brief in this appeal before we issued our decision in *In re A.D. I.* She argued that if the court reversed the jurisdictional findings, then the orders on review in this appeal should be reversed as well for lack of jurisdiction. And Mother further contended that even if we only partially reversed the restraining order or the jurisdictional findings, then remand in this case would be appropriate in order for the juvenile court to weigh custody and visitation orders without relying on erroneous findings. By the time Mother filed her reply brief, *A.D. I* had affirmed all orders in full, and in her reply brief she abandoned those arguments.

B. *The Juvenile Court Did Not Abuse Its Discretion When Issuing the Visitation Order.*

Mother contends that we must reverse the custody and visitation findings since insufficient evidence supports them. Her main challenge appears to be to the terms of visitation, as she complains that there is no justification for the "extremely limited supervised visitation."

7

Where a dependent minor has been removed but is currently placed with a parent, section 364, subdivision (c), authorizes the juvenile court to terminate jurisdiction if court supervision is no longer necessary. "When terminating its jurisdiction over a child who has been declared a dependent child of the court, section 362.4 authorizes the juvenile court to issue a custody and visitation order (commonly referred to as an 'exit order') that will become part of the relevant family law file and remain in effect in the family law action 'until modified or terminated by a subsequent order.' When making a custody determination under section 362.4, 'the court's focus and primary consideration must always be the best interests of the child.' " (*In re T.S.* (2020) 52 Cal.App.5th 503, 513, fn. omitted; see also *In re John W.* (1996) 41 Cal.App.4th 961, 974 [court must use "strict best interest standard"].) " '[T]he juvenile court has broad discretion to make custody [and visitation] orders when it terminates jurisdiction in a dependency case (§ 362.4).' [Citation.] We review the juvenile court's exit orders for an abuse of that discretion. [Citations.] We will not disturb the juvenile court's decision ' " 'unless the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination.' " ' " (*In re J.M.* (2023) 89 Cal.App.5th 95, 112–113; see also *In re Stephanie M.* (1994) 7 Cal.4th 295, 318 [juvenile court's custody determinations reviewed for abuse of discretion].)

Mother argues that the juvenile court abused its discretion since the "extremely limited supervised visitation" allowed by the order does not serve the minor's best interests. She proceeds to summarize all the evidence favorable to her: The minor spoke favorably of visits in February and March 2023 (when he was still in the care of his aunt), Father testified in September 2023 that joint visitation went well, Mother reported during a

8

November 2023 hearing that visits went well, and a May 2024 status report stated that visits went well. But we of course view the record in the light most favorable to the juvenile court's order, and there is abundance evidence supporting the order.

This court's previous affirmance of the protective order detailed Mother's delusional behavior toward the minor, including taking him to an office of the Federal Bureau of Investigation to discuss his health and the way his friends and their parents treated him, and the ways he suffered by frequently being taken out of school for unnecessary medical appointments. The Agency and juvenile court repeatedly encouraged Mother to undergo a psychological evaluation and engage in services in order to appreciate the effect she was having on her son and address what appeared to be an undiagnosed mental-health condition, but she did not do so. The concern with Mother refusing to seek help appeared only to *increase* as the case proceeded, to the point where the juvenile court was concerned Mother might be suffering a psychotic break. With all the evidence supporting the protective order against Mother, it is reasonable to assume that it continues to be in the minor's best interest to have his contact with Mother limited. Given all the evidence, we cannot say that the juvenile court's visitation order was an abuse of discretion.

### C. Mother Forfeited Her Argument that the Visitation Order is Vague and Ambiguous.

We also reject Mother's argument that we must reverse the visitation order on the ground it is vague and ambiguous, because she failed to object on this ground in the juvenile court.

"[A] reviewing court ordinarily will not consider a challenge to a ruling if an objection could have been but was not made in the trial court.

9

[Citation.] The purpose of this rule is to encourage parties to bring errors to the attention of the trial court, so that they may be corrected. [Citation.] [¶] Dependency matters are not exempt from this rule." (*In re S.B.* (2004) 32 Cal.4th 1287, 1293, fn. omitted.)

The record reflects that Mother was given notice about the Agency's proposed visitation order, and the social worker also discussed future visitation with Mother. It appears that future visits would be consistent with the family's then-current routine, which had gone smoothly and resulted in positive visits between Mother and her son. Had mother been concerned that the proposed order was "impermissibly vague and ambiguous as to who is the authorized supervisor(s) of the visitation and who approves the supervisor," as she claims on appeal, she could have raised this issue in the juvenile court.

Mother argues in her reply brief that we should not consider the issue forfeited since it is a legal question that "requires no reference to the underlying record." (E.g., *In re Sheena K.* (2007) 40 Cal.4th 875, 888 [challenge to probation condition as facially vague and overbroad was pure question of law that was "easily remediable on appeal by modification of the condition"]; *In re I.V.* (2017) 11 Cal.App.5th 249, 261 [claim that definition of term in search conditions was unconstitutionally vague was not subject to forfeiture since it could be addressed without examining record].) Mother complains that the order is vague because it is unclear "who are the authorized supervisors of the visitation and who approves the supervisors." But this is precisely the type of question that would require a review of the record to decide what further detail, if any, would be appropriate for the visitation order. (*I.V.*, *supra*, at pp. 260–261 [appellant forfeited overbreadth claim because whether search condition served a rehabilitative purpose would require review of record].)

10

The court appreciates the legislative directive, highlighted by Mother, that exit orders be sufficiently detailed to permit the family court to enforce them. (See *In re Anna T.* (2020) 55 Cal.App.5th 870, 878–879.) Should conflict arise over the visitation order, the parties may seek redress in family court.

## III.
### DISPOSITION

The juvenile court's order dismissing jurisdiction and entering a custody/visitation order is affirmed.

_____

Humes, P.J.

WE CONCUR:

_____

Banke, J.

_____

Langhorne Wilson, J.

*In re A.D.* A171683