Filed 5/4/21  P. v. Gomez CA4/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>IVAN GOMEZ,<br><br>    Defendant and Appellant. | D077707<br><br><br><br>(Super. Ct. No. JCF003344) |


APPEAL from a judgment of the Superior Court of Imperial County, Christopher J. Plourd, Judge.  Affirmed in part; reversed in part.  Remanded with instructions.

Matthew A. Lopas, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson, and Allison V. Acosta, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Ivan Gomez pled no contest to one count of threatening a victim or witness (Pen. Code,[1] § 140, subd. (a)).  He had three prior misdemeanor convictions for drug-related offenses, including one for which he was on probation at the time of the underlying offense.  At sentencing, the court imposed a series of drug-related probation conditions over Gomez's objection:  (1) requiring Gomez to submit to chemical testing for detection of controlled substances; (2) requiring Gomez to provide the probation officer written notice of filling a medical prescription for a controlled substance or marijuana within a reasonable time not to exceed 15 days; (3) prohibiting him from associating with individuals he knows to be drug users or dealers; (4) limiting marijuana usage to prescription usage only; and (5) requiring Gomez to participate in SMART Recovery, a nonresidential drug treatment program.  Gomez objected on the basis that these conditions violate the third prong of *People v. Lent* (1975) 15 Cal.3d 481 (*Lent*) because there was no nexus between the conditions and the present crime or to his future criminality.  Gomez also contends the chemical testing and prescription reporting conditions are unconstitutionally overbroad.  Additionally, Gomez challenges as unconstitutionally vague and overbroad a condition that requires him to report any arrests and/or police contacts within 48 hours.

We conclude that the court did not abuse its discretion in imposing the first four conditions because they meet the requirements of *Lent*.  We further conclude the chemical testing and prescription reporting requirements are not unconstitutionally overbroad.  However, we conclude that the court abused its discretion in imposing a condition that requires Gomez to participate in a nonresidential drug treatment program (SMART Recovery).  Accordingly, we will remand the matter with instructions to strike that

[1]     Statutory references are to the Penal Code unless otherwise specified.

2

condition. We further conclude that the condition requiring Gomez to report any police contacts within 48 hours is unconstitutionally vague as drafted, and we will remand the matter for modification consistent with this opinion.

BACKGROUND AND PROCEDURAL FACTS

We take the facts from the probation report, which summarized the information contained from the Brawley Police Department's report:

"On May 5, 2020, Brawley Police Department's Officer R. Valdez was on patrol in the city of Brawley, when at approximately 0412 hours, he was dispatched . . . in reference to a bedroom window being broken. Upon arriving at the scene, Officer Valdez made contact with Maria F[ ]. [Maria F.] stated she had just gotten out of the shower when she heard a knock on her window. She advised she went to the window and advised the window was unlocked and opened approximately one inch. She stated when she pulled back the curtain, Ivan Gomez opened the window completely and climbed inside the residence. She further stated Gomez was not invited to the residence nor did she allow him to enter the residence. [Maria F.] stated she told Gomez to get out; however, he refused. She stated Gomez was upset due to law enforcement being called to her residence from a prior incident. According to [Maria F.], Gomez accused her of calling officers and attempted to get her to tell him what statement she provided to law enforcement. He further stated[,] 'I'm going to get someone to fuck you up.' [Maria F.] stated [s]he proceeded to tell Gomez to get out; however, he became irate and punched her in the right bicep area. Officer Valdez noted a visible red mark in the area where [Maria F.] was punched. She stated after Gomez punched her, he ran his right arm along a counter top knocking multiple items onto the ground[, along with] a glass cup which broke upon hitting the floor. She stated her mother then proceeded to contact law enforcement and Gomez

3

proceeded to climb out the window and [leave] the area. Subsequently, on May 19, 2020, the defendant was arrested and booked into the Imperial County Jail."

Gomez pled no contest to a violation of section 140, subdivision (a), threatening a victim or witness.

According to the probation report, Gomez had four prior misdemeanors: reckless highway driving in 2010 (Veh. Code, § 23103, subd. (a)); use of a controlled substance in 2013 (Health & Saf. Code, § 11550, subd. (a)); possession of a controlled substance in 2014 (Health & Saf. Code, § 11377, subd. (a)); and possible injection or ingestion device (possession of drug paraphernalia) in 2018 (Health & Saf. Code, § 11364, subd. (a)). The court sentenced Gomez to three years of formal probation and imposed drug conditions "[b]ased [on] the defendant's drug history, as evidenced by the probation [report]." The drug conditions require Gomez to (1) submit to chemical testing for the detection of controlled substances (condition 19); (2) provide written notice to the probation officer within 15 days of filling a medical prescription for a controlled substance or marijuana (condition 20); (3) refrain from associating with known drug users or dealers beyond participation in drug treatment as required (condition 21); (4) refrain from the use or possession of controlled substances and paraphernalia without a prescription, including marijuana (condition 20); and (5) participate and complete the SMART Recovery nonresidential drug treatment program (conditions 22 and 23).[2] Gomez objected to these conditions, contending they

---

[2]    The court directed participation in a nonresidential drug treatment program, which it later specified would be the SMART Recovery program based on the probation department's recommendation. This is reflected in the minute order as two separate conditions, conditions 22 and 23, though it is the same requirement.

4

were not expressly negotiated as part of his plea and had no nexus to the charged offense.

The court also included a condition that Gomez "report any arrests and/or police contacts within 48 hours to the probation officer" (condition 4). Gomez objected to this condition on the grounds that it is overly broad and vague.

Gomez timely appealed.

DISCUSSION

A. Drug Conditions

1. *Legal Principles*

A court has wide discretion to impose conditions on a probationer that further the goals of rehabilitation and public safety. (*People v. Moran* (2016) 1 Cal.5th 398, 402-403 (*Moran*).) However, the court's discretion is not limitless; "a condition of probation must serve a purpose specified in the statute," and the conditions that regulate noncriminal activity must reasonably relate to the crime for which the defendant was convicted, or they must prevent future criminality. (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1121.) A probation condition is invalid if it " '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality . . . .' " (*Lent, supra*, 15 Cal.3d at p. 486.) The test is conjunctive, which means "all three prongs must be satisfied before a reviewing court will invalidate a probation term." (*People v. Olguin* (2008) 45 Cal.4th 375, 379 (*Olguin*).) The relationship between probation conditions and future criminality "contemplates a degree of proportionality between the burden imposed by a probation condition and the legitimate interests served by the condition." (*In re Ricardo P.* (2019) 7 Cal.5th 1113, 1122 (*Ricardo P.*).)

5

Additionally, "courts may properly base probation conditions upon information in the probation report that raises concerns about future criminality unrelated to a prior offense. [Citation.]" (*Ricardo P.*, *supra*, 7 Cal.5th at p. 1122.) However, this requires "more than just an abstract or hypothetical relationship between the probation condition and preventing future criminality." (*Id.* at p. 1121.)

On appeal, we " 'review conditions of probation for abuse of discretion.' " (*Moran*, *supra*, 1 Cal.5th at p. 403.) Specifically, we review a probation condition "for an indication that the condition is 'arbitrary or capricious' or otherwise exceeds the bounds of reason under the circumstances." (O*lguin*, *supra*, 45 Cal.4th at p. 384.)

### 2. *Chemical Testing, Prescription Notification, and Association with Known Drug Users*

Gomez contends the drug conditions violate *Lent* because the plea offense is not related to drug or drug paraphernalia use or possession and there was no evidence of recent drug use. He further contends the conditions bear no nexus to future criminality. The Attorney General contends that because Gomez was previously convicted of drug-related offenses and was still on probation for his 2018 misdemeanor drug conviction at the time he committed the offense here, "to the extent that the conditions prohibit illegal drug use, they are permissibly related to unlawful activity," and to the extent that the conditions prohibit legal activity, like possession of marijuana without a prescription, the conditions are reasonably related to future criminality.

The court expressed concern about Gomez's drug history based on Gomez's three prior drug-related misdemeanor convictions and the fact that Gomez was still on probation for the most recent one when he committed the underlying act here. The court's imposition of conditions aimed to ensure

6

Gomez's ongoing compliance with laws prohibiting unlawful drug possession are relevant to his future criminality. These conditions do not generically support supervision because they regard activity related to specific unlawful behavior for which Gomez has a criminal history. The chemical testing provision helps ensure Gomez does not use narcotics or marijuana, which either relates to conduct which is criminal or is reasonably related to rehabilitation. The prescription reporting condition, likewise, is related to Gomez's future criminality by supporting the monitoring for illegal drug use. It alerts the probation department about Gomez's lawful use of a controlled substance so that the probation officer can modify its supervision to reflect that information. Finally, although Gomez argues the chemical testing and prescription conditions are disproportionately burdensome, he does not explain why this is so.[3] The reporting condition leaves Gomez ample time to report filling a prescription for controlled substances or marijuana, and this type of information seems no more time-consuming or difficult to share than informing the probation officer of a change in address or work conditions. (See, e.g., *Olguin, supra*, 45 Cal.4th at p. 382 [explaining the requirement to report the presence of a pet "imposes no undue hardship or burden"].) As they relate to controlled substances, these conditions simply require Gomez to refrain from unlawful activity and to inform the probation officer with activity that would otherwise be unlawful when it becomes legal temporarily.

Condition 21, which requires Gomez to refrain from associating with known drug users, is also reasonably related to future criminality. The right to freely associate may be restricted as part of the criminal process when the limitation is designed to meet the goals of rehabilitation and protection of the

---

[3]    We address Gomez's challenge that these conditions violate his privacy rights *post*.

public, and the restriction relates reasonably to those goals. (*People v. Lopez* (1998) 66 Cal.App.4th 615, 627-628 (*Lopez*).) This condition helps ensure Gomez does not fall into habits that led to the misdemeanor convictions during the duration of the probation. (See *People v. Peck* (1996) 52 Cal.App.4th 351, 363 ["Where a defendant is convicted of drug possession and admits drug use, a condition of probation that the defendant not associate with other admitted and suspected users is valid"].) The court's decision to apply these drug conditions was not based on an abstract or hypothetical relationship with future criminality because of Gomez's recent criminal history. (See *Lent*, *supra*, 15 Cal.3d at p. 486; *Ricardo P.*, *supra*, 7 Cal.5th at p. 1121.) Thus, these conditions comply with *Lent*.

### 3. *Requirement for Marijuana Prescription for Use*

Gomez also challenges the prohibition of marijuana use without a prescription. The Attorney General argues this condition is appropriate because it reasonably relates to future criminality, citing *People v. Cota* (2020) 45 Cal.App.5th 786 (*Cota*). There, the defendant was convicted of possessing methamphetamine, and the court imposed a condition that restricted alcohol use. (*Id.* at pp. 791-793.) The appellate court recognized that alcohol consumption was not illegal and did not relate to the instant offense; however, it concluded that alcohol use could lead to future criminality because the defendant had a history of substance abuse. (*Id.* at p. 792.)

In *Cota,* the defendant disclosed to the probation department that he was an habitual drug user of methamphetamine and that he used marijuana daily. (*Cota*, *supra*, 45 Cal.App.5th at p. 792.) Although Gomez did not disclose any habitual substance use or abuse, the repeated drug-related misdemeanors offer a basis for the trial court's concern about marijuana use

8

as well. Just as the court in *Cota* imposed alcohol restrictions because of the defendant's history and the desire to prevent future criminality, here the court's imposition of the marijuana limitation was directly related to its concern regarding the number of drug offenses on Gomez's record and his future criminality. We note, too, that the court more narrowly drew this condition by prohibiting marijuana use absent a prescription but otherwise permitting it. This is further indication that the court's focus was on potential drug abuse, reflecting concerns regarding future criminality.

4. *Participation in Nonresidential Drug Treatment Program*

The court ordered Gomez to participate in the SMART Recovery program, a nonresidential drug treatment program, as prescribed by the probation officer. There was no indication here that Gomez's crime of threatening a witness was conducted while he was under the influence or was in any other way related to substance abuse or addiction. (See *Lent*, *supra*, 15 Cal.3d at p. 486.) While we recognize that this condition bears some limited connection to future criminality in light of Gomez's prior misdemeanors, this requirement is disproportionately burdensome, requiring the participation in a 12-step program for which there is no evidence of need. Given the burdensome nature of participation in a drug treatment program and the lack of evidence that such participation relates to the underlying crime or any concerns about Gomez's rehabilitative needs, we conclude that the court abused its discretion in imposing this requirement. (See *Ricardo P.*, *supra*, 7 Cal.5th at p. 1122.)

B. Constitutional Challenge to Drug Conditions

Gomez separately challenges the chemical testing and prescription reporting conditions as unconstitutionally overbroad and a violation of his fourth amendment rights. The Attorney General argues that Gomez forfeited

9

any as-applied challenges to these conditions by failing to object to the conditions on constitutional grounds at the time of sentencing, instead challenging them only as having "no nexus" between the crime charged and the drug conditions. Gomez did not argue below that the conditions were constitutionally overbroad.

The general rules require challenges of this sort to be raised in the trial court (*People v. Welch* (1993) 5 Cal.4th 228, 234-235) so that it can create a record from which an appellate court can discern the court's reasons for the conditions (see *In re Sheena K.* (2007) 40 Cal.4th 875, 889 (*Sheena K.*)). The failure to timely raise the objection can serve as the basis for applying the forfeiture doctrine to attempts to raise objections for the first time on appeal. (*In re I.V.* (2017) 11 Cal.App.5th 249, 260-261 (*I.V.*).) However, when the challenge is to the language of a condition based on vagueness or overbreadth and the challenge can be decided without reference to the facts of the record, the failure to timely object does not require forfeiture. (*Sheena K.*, at p. 887.)

Gomez objected to the trial court to some probation conditions as violative of his constitutional rights. He objected to the police contact reporting requirement as vague and overbroad, and he objected to participating in the SMART Recovery program as violating his first amendment rights. In contrast, he focused his objections to these drug-related conditions on whether there was a nexus between them and criminality, rather than challenge them as violating a constitutional right. Thus, he forfeited any as-applied challenge. Accordingly, we limit our review of these probation conditions to a facial evaluation, which we review de novo. (See *Sheena K.*, *supra*, 40 Cal.4th at pp. 887, 888-889.)

"If a probation condition serves to rehabilitate and protect public safety, the condition may 'impinge upon a constitutional right otherwise

10

enjoyed by the probationer, who is "not entitled to the same degree of constitutional protection as other citizens." ' " (*People v. O'Neil* (2008) 165 Cal.App.4th 1351, 1355, quoting *Lopez, supra,* 66 Cal.App.4th at p. 624.) A constitutionally overbroad condition is one that restricts a fundamental constitutional right to a greater degree than necessary to achieve the condition's purpose. (*Olguin, supra,* 45 Cal.4th at p. 384.) In an overbreadth challenge, we consider the closeness of the fit between the purpose of the restriction, here reformation and rehabilitation, and the burden it imposes on a defendant's constitutional rights, recognizing that perfection is not possible, and " 'practical necessity will justify some infringement.' " (*People v. Pirali* (2013) 217 Cal.App.4th 1341, 1346 (*Pirali*).)

As we explained *ante*, chemical testing verifies a probationer's compliance with the laws prohibiting consumption of illegal narcotics; the requirement is focused on testing to ensure compliance with the law and to provide incentive for rehabilitation. Prescription reporting likewise aids the probation department in monitoring a defendant, in recognition that consumption of controlled substances can be legal. Thus, there is a reasonable connection between the condition and the goals it supports.

Nonetheless, Gomez maintains that these requirements restrict his right to privacy to a greater degree than necessary to achieve the goals. He compares his situation to the defendant's situation in *People v. Appleton* (2016) 245 Cal.App.4th 717, 719-720, a case in which the court imposed an electronic and social media search condition on the defendant. There, the court of appeal explained that such expansive access to electronic information would expose vast amounts of personal information unrelated to the potential for future criminality and noted that whether the defendant used social media to contact a minor for unlawful purposes could be addressed through

11

narrower means. (*Id.* at p. 727.) Gomez contends that the medical information provided by a chemical drug test is more intimate and more personal than a general electronic and social media search condition, so it has even stronger privacy implications. (See *Board of Medical Quality Assurance v. Gherardini* (1979) 93 Cal.App.3d 669, 678 [discussing medical profile as intimate and personal].)

We recognize that medical information can be personal and sensitive, but the probation conditions here do not require the probationer to disclose large swaths of personal medical information. Unlike the expansive electronic and social media search condition in *Appleton*, both the chemical testing and the prescription reporting conditions are limited in scope. The chemical testing discloses only a narrow piece of personal information, whether or not a probationer has ingested a prohibited controlled substance or marijuana. Thus, it is narrowly tailored to address the reformation and rehabilitation purposes for which it was imposed. (See *Pirali*, *supra*, 217 Cal.App.4th at p. 1346.)

Similarly, condition 20, when read in its entirety, makes clear that it requires disclosure of limited information. Condition 20 states in full: "Defendant shall refrain from the use or possession of controlled substances and narcotics paraphernalia without a medical prescription, to include marijuana, and the defendant shall provide written notice to the Probation Officer within a reasonable time, not to exceed 15 days from the date defendant fills the prescription." "The prescription" that a probationer must report to the probation department is the one permitting the use of the aforementioned "controlled substances and narcotics paraphernalia . . . , to include marijuana," not just any and every prescription medication. This condition is sufficiently narrowly tailored to fit the goals of reformation and

12

rehabilitation, particularly when read in connection with the chemical testing condition.  (See *Pirali, supra*, 217 Cal.App.4th at p. 1346.)

C.  Constitutional Challenge to Police Contact Condition

Gomez contends probation condition 4, which requires him to "report any arrests and/or police contacts within 48 hours to the probation officer" is unconstitutionally vague.

"[T]he underpinning of a vagueness challenge is the due process concept of 'fair warning.'  [Citation.]  The rule of fair warning consists of 'the due process concepts of preventing arbitrary law enforcement and providing adequate notice to potential offenders' [citation], protections that are 'embodied in the due process clauses of the federal and California Constitutions.  (U.S. Const., Amends. V, XIV; Cal. Const., art. I, § 7).' "  (*Sheena K., supra*, 40 Cal.4th at p. 890.)  "A probation condition 'must be sufficiently precise for the probationer to know what is required of him, and for the court to determine whether the condition has been violated,' if it is to withstand a challenge on the ground of vagueness."  (*Ibid*.)  Probation conditions are given " ' "the meaning that would appear to a reasonable, objective reader." ' "  (*I.V., supra,* 11 Cal.App.5th at p. 261.)  Thus, the mere fact that there " ' " 'may be difficulty in determining whether some marginal or hypothetical act is covered by [a condition's] language' " ' "  does not render the condition "impermissibly vague."  (*Ibid*.)

Gomez relies on *People v. Relkin* (2016) 6 Cal.App.5th 1188 (*Relkin*) to support his argument that the portion of the condition requiring him to "report any arrests and/or police contacts within 48 hours to the probation officer" is unconstitutionally vague.  In *Relkin*, the court considered a probation condition that required the defendant "to 'report to the probation officer, no later than the next working day, any arrests or any contacts with

13

or incidents involving any peace officer.' " (*Id.* at p. 1196.) The court concluded that "the portion of the condition requiring that defendant report 'any contacts with . . . any peace officer' " was vague because it left him to guess what events or interactions would qualify as reportable. (*Id.* at p. 1197.) According to the court, it was not certain that the condition would not be triggered "when defendant says 'hello' to a police officer or attends an event at which police officers are present, but would be triggered if defendant were interviewed as a witness to a crime or if his 'lifestyle were such that he is present when criminal activity occurs.' " (*Ibid.*) "The language does not delineate between such occurrences and thus casts an excessively broad net over what would otherwise be activity not worthy of reporting." (*Ibid.*)

The Attorney General argues the probation condition here is more appropriately compared to one evaluated in *People v. Brand* (2021) 59 Cal.App.5th 861 (*Brand*), a case in which a panel of our court concluded a report-contact condition was not unconstitutionally broad. The report-contact condition in *Brand* consisted of three sentences. It required the defendant to provide his name, address, and date of birth if contacted by law enforcement. In the same condition, it required the defendant to report a contact or arrest to the probation officer within seven days, including the date of the contact or arrest, any charges, and the name of the law enforcement agency. (*Id.* at pp. 870-871.) Our court explained that a reasonably objective person would take the sentences together and conclude a defendant "is required to report only those contacts in which a law enforcement officer requests identifying information from Brand. . . . When read together, these . . . sentences make clear to a reasonable reader that the law enforcement contact that [the defendant] must report is any contact in which [the defendant] is required to provide his name, address, and date of birth to law enforcement." (*Ibid.*)

14

Further, because the condition required the defendant to report the name of the law enforcement agency involved, "a reasonable person would understand that [the defendant] does not have to report contact with a law enforcement officer that is not meaningful enough for the officer to provide [the defendant] with information about the relevant law enforcement agency." (*Id.* at p. 871.) Thus, the report-contact condition indicated to a reasonable person that a defendant was "not required to report casual, random interactions with law enforcement officers." (*Ibid.*)

The Attorney General contends that the condition at issue here is the same as the one in *Brand* because probation condition 4 requires Gomez to "report any arrests and/or police contacts within 48 hours to the probation officer," and a different condition, probation condition 11, requires Gomez to "identify [himself] to any peace officer, and . . . advise the officer that [he] is on probation and subject to warrantless search." The Attorney General argues that "read together, these two sentences contemplate reporting contacts in which appellant is required to provide his identifying information, and are reasonably read to refer to those contacts where it has been determined that he is either a witness to a crime or a potential suspect in the commission of a crime." But the Attorney General does not explain why these two conditions should be read together. Unlike the condition in *Brand,* the conditions here are not contained in a single report-contact probation condition; they are separated by several other probation conditions unrelated to contact with peace officers, like maintaining employment, participating in a non-residential cognitive counseling program, notification requirements for changes in residence, and warrantless searches, none of which were challenged by Gomez.

The condition here is more like the one challenged in *Relkin*. Both require the probationers to report *any* arrests or police contacts. And neither provides any context for the types of contacts that are reportable. We recognize that there are some differences in the wording of the condition imposed on Gomez and the one in *Relkin*: In *Relkin*, the defendant had to report the contact within 24 hours, while the one here provides for 48 hours. The condition in *Relkin* required the defendant to report "any incidents" that involved a police officer, while that specific requirement was not included in the condition here. However, these differences are minor and do not clarify the vague language that makes the condition problematic. Because it is unclear what contacts require reporting, we conclude the condition is unconstitutionally vague and overbroad, and we will remand the matter for the trial court to make appropriate modifications.

## DISPOSITION

We remand the matter to the trial court with instructions to strike the condition that Gomez participate in the nonresidential SMART Recovery drug treatment program.[4] We further direct the court to modify probation condition 4, which requires Gomez to report any arrests and/or police contacts

---

[4]    This requirement is found in probation conditions 22 and 23.

16

within 48 hours to the probation officer, to address the concerns expressed in this opinion.[5]  In all other respects, the judgment is affirmed.


                                                                    HUFFMAN, J.

WE CONCUR:


BENKE, Acting P. J.


GUERRERO, J.

---

[5]     We alert the trial court to Assembly Bill No. 1950, which amended section 1203.1 and became effective January 1, 2021.  (Stats. 2020, ch. 328, § 2.)  The amended section may impose limitations on the term of probation. We offer no opinion regarding how the trial court should address the amended statute.