Filed 4/4/23  In re O.V. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| In re O.V., a Person Coming Under the Juvenile Court Law. | C095935 |
| THE PEOPLE,<br><br>          Plaintiff and Respondent,<br><br>     v.<br><br>O.V.,<br><br>          Defendant and Appellant. | (Super. Ct. No. JJC-JV-DE-2022-0000008) |

O.V. (the minor) appeals a dispositional order after the juvenile court sustained allegations that the minor had committed second degree robberies.  The minor contends (1) there is insufficient evidence that he participated in the robberies, and (2) a probation

1

condition requiring the minor to submit to photographing as directed by any probation officer or police officer is unconstitutionally vague and overbroad.

Finding no merit in the contentions, we will affirm the dispositional order.

BACKGROUND

A Monterey County District Attorney's wardship petition under Welfare and Institutions Code section 602 alleged that the minor committed three counts of second degree robbery. (Pen. Code, § 211) At the jurisdictional hearing, the People called Danny Hamilton, a security officer. At approximately 4:40 p.m., Hamilton was in a walkway between the watch and jewelry retail stores he guarded in Carmel. He heard a loud noise and went to investigate. He heard a second boom and the sound of breaking glass. Hamilton saw three people dressed in dark clothing and masks running from the watch store. Hamilton yelled for them to stop and pursued them. He saw them enter a black SUV driven by a fourth person, which sped away. The SUV was missing license plates and had tinted windows. In the store, Hamilton observed broken showcases. Two sledgehammers were left behind.

Carrie A., Audrey H., and Keira C. had been inside the store and saw people in black with masks, hoods, and gloves smashing showcases and trying to get items out of them. Carrie A. ran to get Mr. Hamilton, who she met in the doorway and then continued to the other store to warn them. Audrey H. and Keira C. were in the vault. They heard loud noises and saw, on the surveillance feed, three people sledgehammering showcases. Videos showing the robbers entering the store, smashing the showcases, attempting to remove items, and depicting the damage were admitted into evidence.

Brandon O. was in a car at a stop sign when he saw three people in dark clothing, masks, and carrying sledgehammers run into a store. Brandon jumped out of the car and called 911. He then saw the individuals exit the store and enter a 2016 to 2020 "dark black Toyota Highlander with blacked-out windows" that was missing plates and was

driven by a fourth person. The Highlander drove through two stop signs and Brandon suspected it was headed for Highway 1.

Corporal Rachelle Lightfoot responded to the store's panic button alert. Witnesses described the robbers as "three slim kids" in black hoodies and masks. Corporal Lightfoot contacted dispatch, who set up monitoring of highway entrances and exits looking for the black Highlander with tinted windows and missing plates. At approximately 5:15 p.m., Lightfoot learned the California Highway Patrol (CHP) had pulled over a similar Highlander, and she sent video footage to Officer Joe Martis who responded to the stop.

Officer Martis testified a black Highlander had been stopped at approximately 5:17 p.m. He responded to the stop, which was on north Highway 1, just south of Imjin Road. The minor was one of two people who had been pulled over. The minor wore a black t-shirt, dark gray sweatpants, and black and white Nike Air Max shoes. His clothing, body type, and height matched that of the robbers as described by eyewitnesses and seen on surveillance video. The minor had a fresh abrasion on his right arm consistent with scraping a sharp edge, which he blamed on a previous fight. Officer Martis arrested him, believing he was one of the people in the surveillance video.

Officer Martis said officers did not find the missing property or other incriminating evidence in the Highlander when it was impounded, but the vehicle matched the Highlander from the surveillance video with the exception of the missing license plates. He opined that given the time of day and the time that had elapsed since the robbery, it would be reasonable for an individual fleeing Carmel to be in the approximate location where the CHP had stopped the Highlander.

Officer Eric Dutra of the CHP had been tasked with helping to locate the black Highlander. He testified to his involvement in the matter. Dutra cleared the first Highlander that had been stopped because the occupants did not match the suspect description. Shortly thereafter, Officer Dutra noticed a second black Highlander, which

3

he followed noting that the rear plate was badly bent and did not look securely attached. The Highlander was registered to a rental company, and Officer Dutra thought the state of the license plate was unusual because a rental company would normally have the license plates securely attached and in good condition.

Officer Dutra followed the Highlander until the exit where his partner was waiting, and he effectuated a traffic stop. The minor, who was a passenger, was extremely nervous and initially refused to answer questions about the injury to his arm. The minor told officer Dutra they "had just come from somewhere far away." Officer Dutra said the minor and the driver matched the suspect description in that they were "thinly built younger males." The rear license plate was being held on by mismatched screws that had been hand tightened.

Following argument from the parties, the juvenile court sustained the allegations that the minor had committed three counts of second degree robbery against Carrie A., Audrey H., and Keira C.

Because the minor resided in San Joaquin County, the matter was transferred there for disposition. On February 1, 2022, the San Joaquin County juvenile court adopted the probation department's recommendation (with some modifications not relevant here), adjudged the minor a ward of the court (Welf. & Inst. Code, § 602), and placed him on formal probation with a commitment to juvenile hall for 360 days and with 58 days of custody credit. The minor's request that he be allowed to contact a coparticipant in the crime was denied. The minor did not otherwise object to any of his conditions of probation.

DISCUSSION

I

The minor contends substantial evidence does not support the juvenile court's determination that he was one of the three individuals who committed the robberies. We disagree.

4

In sustaining the People's allegations, the juvenile court said that with regard to identification, the juvenile court was relying on the make and model of the vehicle at the scene which was consistent with the vehicle stopped on Highway 1; the body types and ages of the perpetrators inside and outside the store; the time elapsed between the incident and the traffic stop; the similarity of clothing of the minor and the participant in the robbery, including distinctive shoes; the lack of a license plate on the vehicle at the scene and a license plate on the vehicle at the stop that was not securely attached and looked like two mismatched screws had been hand tightened; the injury and blood on the minor's hand that the CHP officer said was consistent with being cut by glass; the observations of the CHP officer that the minor was very nervous; the minor's demeanor when questioned; and the minor's responses to the questions. The juvenile court said that based on all that, identification had been proven beyond a reasonable doubt.

We review this finding using the same standard we would in an adult proceeding. (*In re Matthew A.* (2008) 165 Cal.App.4th 537, 540.) In determining a sufficiency of the evidence challenge, we "review the whole record in the light most favorable to the judgment . . . to determine whether it discloses substantial evidence -- that is, evidence which is reasonable, credible, and of solid value -- such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 578.) "The focus of the substantial evidence test is on the whole record of evidence presented to the trier of fact, rather than on 'isolated bits of evidence.' [Citation.]" (*People v. Cuevas* (1995) 12 Cal.4th 252, 261, italics omitted.) "Reversal on this ground is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' [Citation.]" (*People v. Bolin* (1998) 18 Cal.4th 297, 331.) In other words, " 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' [Citation.]" (*People v. Nguyen* (2015) 61 Cal.4th 1015, 1055, italics omitted (*Nguyen*).)

The standard is the same in cases in which the People rely primarily on circumstantial evidence. (*People v. Bean* (1988) 46 Cal.3d 919, 932.) " ' "If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also be reasonably reconciled with a contrary finding does not warrant a reversal of the judgment." ' [Citations.]" (*Id.* at p. 933.)

The minor argues "[a] factual review of the presented evidence, taken as a whole, fails to provide substantial evidence beyond a reasonable doubt that O.V. was a perpetrator of these crimes." But having reviewed the record in the light most favorable to the prosecution (*Nguyen, supra*, 61 Cal.4th at p. 1055), we conclude substantial evidence supports the juvenile court's determination.

The minor argues too much time had elapsed between the robberies and arrest for the minor's presence in the Highlander to be probative of the minor's involvement. He further argues too little time had elapsed for the robbers to have reattached the license plate and offloaded occupants and incriminating evidence. But approximately 30 minutes passed between the robbery and the stopping of the Highlander. That was enough time for the robbers to have quickly reattached the rear license plate and to have offloaded two people and evidence implicating them in the robbery, but not so much time that it cannot be inferred that the minor was involved.

There was other evidence of identity, including the minor's clothing, body type, and height, which matched descriptions of the robbers as relayed by eyewitnesses and seen on surveillance. The surveillance footage shows a person in gray sweatpants and a long-sleeved hooded sweatshirt using his right arm to reach into a sledgehammered glass showcase. When officers apprehended him, the minor was nervous and had an injury

6

to his right arm consistent with scraping a sharp edge. In addition, the traffic stop occurred at a location consistent with fleeing the robbery.[1]

Sufficient evidence supports the juvenile court's determination.

## II

The minor also challenges the juvenile court's imposition of probation condition No. 33 (condition 33), which states: "The minor shall submit to photographing as directed by any probation officer or police officer." Although the minor's counsel did not object to condition 33 in the juvenile court, the minor asserts a facial challenge arguing condition 33 is both unconstitutionally vague and overbroad. The minor also urges us to forgive his forfeiture and conduct an as-applied review of the condition's constitutionality. We limit our review to the facial challenge.

A defendant may raise for the first time on appeal a facial constitutional defect in a probation condition if the question can be resolved as a matter of law without reference to the sentencing record. (*In re Sheena K.* (2007) 40 Cal.4th 875, 886-889 (*Sheena K.*).) Thus, we can consider facial challenges to the constitutionality of probation conditions not objected to below, as such challenges do not require scrutiny of individual facts and circumstances but instead require review of legal concepts. (*Id.* at p. 885.) By contrast, a constitutional defect that is "correctable only by examining factual findings in the record or remanding to the trial court for further findings" is subject to forfeiture if the claim was not raised in the trial court. (*Id.* at p. 887.) Our review is de novo. (*Id.* at pp. 889-892 [conducting de novo review]; *In re I.V.* (2017) 11 Cal.App.5th 249, 261.)

---

[1] We decline to take judicial notice of the distance between the store where the robbery occurred and the location of the traffic stop. The request was not brought by motion (Cal. Rules of Court, rule 8.252(a)(1)) and it is not necessary to the resolution of this appeal.

The minor argues condition 33 is unconstitutionally vague because its specific meaning and context are inadequate to provide fair warning of what is required or prohibited. As explained in *Sheena K.*, a probation condition must be sufficiently precise for the probationer to know what is required and for the court to determine whether the condition has been violated. (*Sheena K.*, *supra*, 40 Cal.4th at p. 890.) Here, condition 33 instructs the minor to submit to photographing as directed by any probation officer or police officer. Because it tells the minor exactly what to do in order to comply with the condition, it is not facially void for vagueness.

The minor further argues condition 33 infringes on his right to privacy and is not carefully tailored or reasonably related to the compelling state interest in reformation and rehabilitation. He asks us to strike or modify it to address its shortcomings.

" 'The juvenile court has wide discretion to select appropriate conditions,' but '[a] probation condition that imposes limitations on a person's constitutional rights must closely tailor those limitations to the purpose of the condition to avoid being invalidated as unconstitutionally overbroad.' " (*In re Ricardo P.* (2019) 7 Cal.5th 1113, 1118 [quoting *Sheena K.*].) "The essential question in an overbreadth challenge is the closeness of the fit between the legitimate purpose of the restriction and the burden it imposes on the defendant's constitutional rights -- bearing in mind, of course, that perfection in such matters is impossible, and that practical necessity will justify some infringement." (*In re E.O.* (2010) 188 Cal.App.4th 1149, 1153.) It is only if the probation condition is incapable of a constitutional application under any circumstances that it will be found facially invalid. (*People v. Gonzalez* (2020) 57 Cal.App.5th 960, 975.)

Here, although the minor retains a right of privacy, as a probationer it is a reduced one. (*In re Jaime P.* (2006) 40 Cal.4th 128, 136-137.) This is balanced with the State's countervailing interests in rehabilitating the minor and protecting the public. (*In re Ricardo P., supra*, 7 Cal.5th at p. 1118.) The State's interests are furthered by the

8

photographing requirement found in condition 33, which could facilitate identification in the event of contact with law enforcement. Defendant's facial overbreadth challenge lacks merit.

DISPOSITION

The juvenile court's dispositional order is affirmed.

/S/
MAURO, J.

We concur:

/S/
ROBIE, Acting P. J.

/S/
McADAM, J.*

---

* Judge of the Yolo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

9